IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK RONALD HOLLEY, Sr.

    Plaintiff,                    No. CIV S-04-2006 MCE EFB P

    vs.

CALIFORNIA DEPARTMENT
OF CORRECTIONS, et al.

    Defendants.                FINDINGS AND RECOMMENDATIONS

    Plaintiff is a prisoner, without counsel, suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. Plaintiff commenced this action on September 27, 2004. However, the action proceeds on the February 27, 2006, second amended complaint, in which plaintiff alleges that defendants Youngblood, Davis, Aronsen, Veal, Jones, Moreno and Williams forced him to cut his hair and punished him for prior refusals to do so. He was required to cut his hair under the California Department of Corrections and Rehabilitation's grooming standards. Plaintiff claims that this substantially burdened his exercise of religion and violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He also claims that it violated his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Fourth Amendment.

////

The case is now before the court on cross-motions for summary judgment. Plaintiff argues that it is undisputed that he was required to cut his hair and that, as a matter of law, this violated his federally protected rights. Defendants argue that plaintiff failed to exhaust available administrative remedies and that the request for injunctive relief is now moot because the prison regulations were amended and plaintiff is permitted to have long hair. Defendants also argue that plaintiff's claims are barred by the Eleventh Amendment, and that they are entitled to qualified immunity. Finally, defendants argue that plaintiff cannot produce evidence to demonstrate that his federally protected rights were violated.

As a preliminary matter, the court notes that it will not address defendants' mootness argument because plaintiff does not in the second amended complaint seek an injunction. For the reasons explained below, the court finds that defendants' motion for summary judgment must be granted and that plaintiff's motion for summary judgment must be denied.

**I.    Facts**

Plaintiff is a prisoner in the custody of the California Department of Corrections ("CDC"). He has, at various times, identified himself as a Christian, a Satan worshiper, a Nazarite, and has attended Muslim services.

Upon his conviction of second degree robbery in 1999, plaintiff was sent to the North Kern State Prison Reception Center, where during routine processing he identified himself as Christian. Attach. 1 to Defs.' Ex. A, at 15, 21. At that time his hair was short and he had a moustache and a slight beard. Attach. 1 to Defs.' Ex. C. Based on his classification score, diagnosis of schizophrenia and history of hearing voices, prison officials decided to place plaintiff in Pelican Bay State Prison. Attach. 1 to Defs.' Ex. A, at 9, 19, 25. Accordingly, on November 9, 1999, he arrived at Pelican Bay State Prison. *Id.,* at 15. Because of his poor mental health, including hallucinations and threats of suicide, he was transferred to the California Medical Facility ("CMF"). Attach. 1 to Defs.' Ex. A, at 27; Attach. 1 to Defs.' Ex. B, at 11.

2

When he arrived at CMF in June of 2000, his hair was longer and his beard was heavier than when he arrived at the Reception Center in 1999. Defs.' Ex. C, Photo dated June 13, 2000. He still had a moustache but he did not have braids. *Id.*

In November 2000, plaintiff began reporting hearing voices telling him to hurt others and he requested the medication olanzapine. Defs.' Ex. B, Attach. 1, at 20. A psychiatrist found that plaintiff was malingering to avoid returning to Pelican Bay State Prison. *Id.,* at 23. On December 8, 2000, plaintiff reported that he had been possessed by a demon who told him he was no good because he did not worship Satan anymore. *Id.,* at 15. Plaintiff told mental health staff that this bothered him because he had left worshiping Satan to become a Christian. *Id.,* at 26-28. A prison psychiatrist responded by altering plaintiff's medications. *Id*. On December 12, 2000, prison officials returned plaintiff to Pelican Bay State Prison, where he reported that the medications were helping but that he still heard the voice and could see the "demon." Attach. 1 to Defs.' Ex. A, at 15, 29-30. Plaintiff eventually stabilized in response to medications and was returned to the California Medical Center on May 10, 2001. Attach. 1 to Defs.' Ex. B, at 35; Attach. 1 to Defs.' Ex. A, at 29, 31. On May 11, 2001, his hair was yet longer than before. Defs.' Ex. C, Photo of May 11, 2001. Throughout 2001, plaintiff reported having discussions with his deceased grandfather and continued interaction with the "evil spirits." Attach. 1 to Defs.' Ex. B, at 36-37, 40-41. On March 6, 2002, prison officials returned plaintiff to CMF. Attach. 1 to Defs.' Ex. A, at 33-34.

As of September 19, 2003, plaintiff was wearing his hair with short braids in the back and he had a moustache and small beard on the chin. Defs.' Ex. C, Photo dated December 19, 2003.

In 2004, plaintiff continued to grow his hair. As explained in detail below, in April 2004, plaintiff began complaining that he should be permitted to grow his hair in spite of the grooming regulations, but prison officials disagreed. This led to a series of four grievances being filed by plaintiff in 2004 and 2005, which are discussed below. By August 25, 2005, a disciplinary

report was filed charging plaintiff with growing eight-inch long braids in violation of the grooming regulations. Attach. 1 to Defs.' Ex. A, at 92-94. Plaintiff was found guilty and was assessed 30 days of behavior time credits, but the charge later was dismissed. Attach. 1 to Defs.' Ex. A, at 92-94. On September 22, 2005, plaintiff again was charged with having braids more than eight inches long in violation of the grooming regulations. *Id*., at 95-98. Plaintiff asserted that it violated his religious beliefs to cut his hair. *Id.*, at 99. The charge was dismissed in the interest of justice, but he was warned that continued violation of the regulations could lead to him being referred to a classification committee as a "program failure" and some form of disciplinary action. *Id.*, at 96. On October 12, 2005, a disciplinary report was filed charging plaintiff with violating the grooming regulations. *Id.*, at 108-110. He was found guilty and lost 30 days of behavior credit, but, again, the charge was dismissed in the interest of justice. The penalties were vacated and the credits restored. *Id.,* at 109.

Plaintiff alleges that his religious beliefs cannot adequately be described by reference to an established religion. At deposition he asserted that sometime in the year 2001, he experienced a "divine intervention," which he describes as a religious experience in which he felt that God was talking to him. Defs.' Ex. E, at 24-25, 26. He does not identify himself as "Muslim, Christian, Rastafarian or anything like that." *Id.,* at 25. He asserts that his beliefs and practices "involve[] paying close attention to my spirit, what's being conveyed to me through my spirit and direction that I receive through that - - through my spirit. It guides me through my daily walk." *Id*., at 24-25. Nevertheless, he relies on the Hebrew Bible, Numbers Chapter 6, verses 3-5, which describes the requirements of a Nazarite, as the source of his practices. Ex. 4 to Pl.'s Mot. for Summ. J., Declaration of Tenets, Sincere Religious Beliefs, at 1. He refers to text that describes the vows of a Nazarite, including separation from wine, moist or dried grapes, refraining from cutting the hair and beard, and making burnt, sin and peace offerings in the form of animals. Defs.' Ex. H. He also relies on the Christian Bible's books of Luke, Matthew and Mark for the belief that Jesus was a Nazarite and was the Christ, and that since Jesus was

4

crucified, animal sacrifice no longer is necessary. Ex. 4 to Pl.'s Mot. for Summ. J., Declaration of Tenets, Sincere Religious Beliefs, at 3-5. Plaintiff asserts that to be sincere in his service to God, he must remain "in a sober state of mind; and this [has] to be a 24 hour 7 day a week affair," and refrain from cutting his hair as he believes Jesus did. *Id*., at 2.

**II.    Plaintiff's Grievances**

    **A. Grievance CMF-04-M-0715**

On April 19, 2004, plaintiff submitted a grievance designated Log. No. CMF-04-M-0715. Defs.' Ex. A, Attach. 1, at 37-61. He complained that prison staff violated his right to practice his religion but did not specify how. He also requested, without explanation, that he be exempted from the grooming regulations "as his religious faith requires, in regards to his hair." *Id*., at 37. The appeal was denied at the informal level of review. *Id.* Plaintiff appealed to the second level of review. The reviewer, defendant Veal, framed the question as, "[w]hether or not Appellant should be exempt from compliance with Departmental Grooming Standards, based on his Muslim religious belief." *Id*., at 39. Defendant Veal found that a recent court decision[1] permitted Muslim prisoners at California State Prison - Solano, to grow beards, but the Administrative Law Office declined to adopt a religious exception to the grooming standards. He therefore denied the appeal. *Id*., at 40. Plaintiff appealed to the Director's Level of Review. The reviewer on that level noted that plaintiff's original grievance complained of religious discrimination, but he had changed it to complain of sex discrimination. *Id*., at 57. The reviewer denied the appeal because plaintiff "failed to provide documentation or make a persuasive argument that would support his position," and advised plaintiff that the decision exhausted the administrative remedy. *Id*.

////

---

[1] The decision appears to refer to one of the orders entered with respect to the litigation which culminated in the decision in *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), in which the Ninth Circuit upheld the constitutionality of RLUIPA.

### B. Grievance CMF-04-M-1114

On May 13, 2004, defendant Youngblood filed a disciplinary report charging plaintiff with growing his hair beyond the length permitted in the grooming regulations. Defs.' Ex. A, Attach. 1, at 66-67. Plaintiff refused to cut his hair on the ground it was against his religion. *Id*. On June 12, 2004, defendant Jones found plaintiff guilty of the charge. Jones warned plaintiff that he must comply with the grooming regulations in the future, and revoked plaintiff's canteen and gym privileges for one month. *Id*. Defendants Williams and Moreno reviewed and signed the decision. *Id.* On June 24, 2004, plaintiff submitted a grievance designated Log No. CMF-04-M-1114, challenging the May 13, 2004, disciplinary action. He asserted that it was against his religious beliefs to cut his hair, and that the grooming regulations were unfair because they permitted women, but not men, to have long hair. *Id*., at 63-65. The informal and first formal levels of review were bypassed. Defendant Veal denied the grievance on the second level of review on the ground that the CDC would exempt from the grooming standards only Muslim prisoners confined at California State Prison - Solano. *Id.,* at 70-72. A record used to track prisoners' grievances shows that plaintiff pursued this appeal to the second level, but there is no entry suggesting that he pursued it to the Director's Level of Review. Defs.' Ex. G, Attach. A. On June 20, 2004, plaintiff cut his hair in order to avoid punishment. Pl.'s Mot. for Summ. J., at 57.

### C. Grievance CMF 04-M-01224

On July 7, 2004, plaintiff complained to defendant Aronsen about being moved to a new cell, stating that he could not move if the new cell-mate was a Crip or a "B Cat," i.e., an effeminate homosexual. Defs.' Ex. A., Attach. 1, at 83. Defendant Aronsen made a notation in plaintiff's central file that plaintiff was a member of the Bounty Hunters, West Side Bloods, a street gang. *Id.*, at 2-24. Later that day, plaintiff filed a grievance designated Log No. CMF 04-M-01224. In that grievance, plaintiff denied having told defendant Aronsen that he was a Blood, admitted that he had been, but was not now an active gang member, and asserted that defendant

6

Aronsen identified plaintiff as a Blood to retaliate against plaintiff. *Id*., at 73-82. The next day, a classification committee noted that plaintiff's records showed he had been a member of the West Side Blood Bounty Hunters. *Id.,* at 84. On August 22, 2004, plaintiff's grievance was denied on the first level of review and on October 12, 2004, it was denied on the second level of review. *Id.,* at 78-82. Plaintiff appealed to the Director's Level of Review, where relief was denied on January 27, 2005. Defs.' Ex. G, Attach. A, at 3.

### D. Grievance CMF-05-M-1848

On August 21, 2005, plaintiff filed a grievance designated Log No. CMF-05-M-1848. In that grievance, he asserted that even though he had "non-traditional" religious practices, he attended Muslim services and wanted permission to purchase oils and other products that he asserted Muslims use to "nurture the healthy growth of his hair, in practice of his faith." Defs.' Ex. A, Attach. 1, at 99-107. The Muslim chaplain denied the grievance at the informal level on the ground that plaintiff was not a member of the prison's Muslim community. *Id.,* at 99. The second level reviewer denied the appeal on October 13, 2005. *Id.,* at 1202-1203. Plaintiff appealed to the Director's Level of Review, and on February 2, 2006, the appeal was denied on the ground there was no evidence that the items plaintiff wanted to purchase were related to a religious faith. *Id.,* at 107.

### III. Summary Judgment Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The standards under Rule 56 to determine whether there is a "genuine issue of material fact" is well established:

////

---

[2] On June 21, 2005, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

7

> [T]he Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex,* 477 U.S. at 323.

**IV.   Failure to Exhaust**

Defendants assert that plaintiff failed to exhaust available administrative remedies before commencing suit. Plaintiff filed four grievances but appears to have satisfied the exhaustion requirement as to only one.

A prisoner may bring no action under 42 U.S.C. § 1983 or any other federal law until he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This requirement is

8

mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.2d 1048, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and the prisoner is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ S.Ct. ___, 2007 WL 135890 (U.S.)(January 22, 2007); *see also*, *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (defendant has burden of raising and proving failure to exhaust).

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for grievance content. Cal. Code Regs. tit 15, §§ 3084.2, 3085. Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. Cal. Code Regs. tit. 15, § 3084.5. A division head reviews appeals on the first formal level, *see* Cal. Code Regs. tit. 15, § 3084.5(b)(3), and the warden or a designee thereof reviews appeals on the second formal level. *See* Cal. Code Regs. tit. 15. § 3084.5(e)(1).

Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a).

The evidence shows that three of the four grievances identified above clearly do not satisfy section 1997e(a). Plaintiff's first grievance, CMF 04-M-0715, filed on April 19, 2004, complained that his religious rights were violated. On appeal to the Director's Level of Review plaintiff changed the basis for the complaint to gender discrimination. Thus, defendants argue, plaintiff did not exhaust his First Amendment and RLUIPA based claims. As discussed below,

9

this is the only grievance that exhausted any of plaintiff's claims.

Plaintiff did not pursue his second grievance, CMF 04-M-1114, in which he complained that disciplining him for refusing to cut his hair violated his right to practice his religion, to the Director's Level of Review. Thus, he did not exhaust any claim with this grievance.

Review of plaintiff's grievance designated CMF 04-M-01224, in which plaintiff complained that Aronsen retaliated against plaintiff by identifying him as a gang member, was not complete until after plaintiff commenced this action. He filed the grievance on July 7, 2004. He brought this action on September 27, 2005. Although he pursued the grievance to the Director's Level, it was not resolved until January 27, 2005, after plaintiff brought this action. Plaintiff therefore did not properly exhaust his retaliation claim.

Similarly, plaintiff filed this action before completing the administrative appeals process with respect to his fourth grievance, CMF-05-M-1848, which he filed on August 21, 2005, and in which he complained that his property was confiscated. Although he pursued it to the Director's Level, review was not complete until February 2, 2006. Therefore, this grievance did not exhaust any claim in this action.

Plaintiff submitted the first grievance, CMF-04-M-0175, on April 19, 2004. In it, he claimed that prison staff violated his right to practice his religion. He requested that he be exempted from the grooming regulations "as his religious faith requires, in regards to his hair." Plaintiff did not explain how this was so. Prison records show that he pursued this appeal to the Director's Level of Review, where it was denied on September 14, 2004. Defs.' Ex. A, Attach. 1, at 57. Thus, review of plaintiff's claim that he should be able to grow his hair despite the grooming regulations was completed before plaintiff filed this lawsuit.

Defendants note, however, that the initial grievance complained of religious discrimination, but on appeal to the Director's Level of Review, plaintiff changed the basis for

////

////

10

the complaint to sex discrimination.[3] For that reason, defendants argue that the religion based claims were not exhausted. The argument seems to suggest that a complaint over a specific fact(s) can never be properly exhausted if a California prisoner changes a legal theory in support of the grievance. The argument is at odds with the reasoning in *Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378, 2385-86 (2005). To "properly" exhaust, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at ___, 126 S.Ct. at 2386. Unless otherwise specifically provided by the prison regulations, it is the substance of the grievance asserted not the particular legal theory or form, that satisfies the exhaustion requirement of the PLRA. Thus, if the administrative appeals system does not require a prisoner to identify potential defendants by name, then a prisoner's failure to do so is not fatal to his attempts to satisfy 42 U.S.C. § 1997e(a). *Jones v. Bock*, __ S.Ct. ___, 2007 WL 135890 (U.S.), at *11-12. "[I]t is the prison's requirements, and not the PLRA that define the boundaries of proper exhaustion." *Jones*, __ S.Ct. at ___, 2007 WL 135890 (U.S.), at *12. The specific mandatory requirements are set out by regulation. Under *Woodford* and *Jones* they will not be implied. Similarly, if an administrative appeals system does not require a prisoner to itemize or specify the legal theories under which he intends to proceed should he pursue a lawsuit, his failure to do so is not fatal to his attempts to satisfy the exhaustion requirement. Whether the inmate complained of the action against controls, not the format for

how he complained unless he has failed to comply with a specific requirement mandated by the regulations.

      The applicable regulations instruct California prisoners to use the required form and to "describe the problem and action requested" but do not require any specific content. Cal. Code

---

[3] Neither defendants nor plaintiff submit a copy of plaintiff's appeal to the Director's Level of Review. The court has only the interpretation of the reviewer on the Director's Level as evidence of what plaintiff argued on that level.

Regs. tit. 15, §§ 3084.2(a), 3085. Here, plaintiff asserted two legal theories, i.e., freedom to practice his religion under First Amendment freedom of religion and equal protection under the Fourteenth Amendment. The former he asserted in the initial appeal, and the latter he raised on the highest level of review. In short, he was inconsistent in the legal basis he perceived as giving rise to his claim. But he was consistent in his claim that requiring him to cut his hair allegedly violated his constitutional rights. Defendants do not cite, and the court has not found any regulation that requires California prisoners to include in their grievances itemized legal theories for their complaint that specific conduct by prison officials violates the inmates federal constitutional rights. Nor is the court aware of any rule which requires inmates to adhere to all legal theories they happen to include throughout the process in order to exhaust the available remedies, or precludes them from amending their legal theories during the administrative appeal process.

Here, plaintiff, on the required form, described factually the problem; i.e., he felt he had a legal right to grow his hair in spite of the grooming regulations. Prison officials accepted and reviewed that grievance. Although he changed his theory on appeal, the factual basis of his complaint was the same. The reviewer at the Director's Level of Review informed plaintiff that his appeal on that level exhausted the remedies available to him. This appears to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a).

As discussed, this is the only grievance for which review was complete at the Director's Level before plaintiff brought this action. Defendants argue in the alternative that this grievance did not concern any misconduct by the named defendants. Apart from the problems this argument encounters with *Woodford*, it is factually mistaken. It misses the role of defendant Veal, who was the reviewer that denied the appeal at the second level. Significantly, Veal posed the issue as "Whether or not Appellant should be exempt from compliance with Departmental Grooming Standards, based on his Muslim religious belief." Defs.' Ex. A, Attach. 1, at 39. Veal
////

explained that although a recent court decision[4] permitted Muslim inmates to grow beards, the state Administrative Law Office declined to adopt a religious exception to the grooming standards. On that basis, he denied the appeal. *Id*., at 40.

For these reasons, plaintiff's grievance CMF-04-0715 satisfied the exhaustion requirement for plaintiff's claims that defendants violated his rights by enforcing the grooming regulation governing hair length against him.

## V.     Fourth Amendment

Although defendants do not address it in the context of exhaustion of plaintiff's grievances, they separately move to dismiss plaintiff's claim that defendants somehow violated his Fourth Amendment rights by forcing him to cut his hair. The Fourth Amendment claim is frivolous. "When the Fourth Amendment was adopted, as now, to 'search' meant to look over or through for the purpose of finding something; to explore; to examine by inspection; as, to search the house for a book; to search the wood for a thief." *Kyllo v. United States*, 533 U.S. 27, 34, n. 1 (2001). Plaintiff alleges that he was punished and forced to cut his hair to comply with grooming regulations, not that he was searched. Therefore, this claim must be dismissed for plaintiff's failure to state a cognizable claim.

## VI.    Sovereign Immunity

Defendants argue that plaintiff's claims are barred the state's Eleventh Amendment immunity. They explain that these prison officials had no discretion not to enforce the grooming regulations. They rely four cases: *Doe v. Lawrence Livermore Nat'l Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997), *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), *Hafer v. Melo*, 502 U.S. 21, 30 (1991), and *Asker v. Cal. Dept of Corr.*, 112 F.3d 392, 394 (9th Cir. 1997). At their core, these cases explain the difference between personal and official capacity suits brought under 42 U.S.C. § 1983 as those suits are affected by the Eleventh Amendment.

---

[4] *See Mayweathers v. Newland*, 314 F.3d at 1062.

Fundamentally, the Eleventh Amendment protects states from suit for damages brought by citizens of a state. *Hans v. Louisiana*, 134 U.S. 1, 14-16 (1890). Section 1983 provides for a cause of action against *persons* who violate the federal constitutional rights of others while acting under color of state law. 42 U.S.C. § 1983.

It is well established that Congress, in enacting section 1983, did not abrogate the states' Eleventh Amendment immunity for damages claims under that statute. "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes" are not "persons" under section 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989). However, whether a state official's acts are also shielded by the Eleventh Amendment is not always clear. Suit for damages against state actors in their "official capacities" is the functional equivalent of suing the state itself, and such suits under section 1983 are barred. *Will*, 491 U.S. at 71. "The phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Defendants argue that the essence of the claims render this an official capacity suit for damages. However, they simply state the obvious; i.e. that official capacity claims are barred and individual capacity claims are not.

On this record, the court cannot clearly say that plaintiff is not suing the defendants for damages in their individual capacities. To the contrary, insofar as plaintiff alleges in his complaint that he sues each defendant in their personal and official capacities, the court liberally construes it to mean that he sues them in their personal capacities and, in the alternative, in their official capacities. *See Ashker*, 112 F.3d at 395. However, any and all official capacity claims for damages are clearly barred and must be dismissed. *Doe v. Lawrence Livermore Nat'l Laboratory*, 131 F.3d at 839. Finally, it is also well established that the state, and those blanketed with its immunity under the Eleventh Amendment, are not immune from suit under § 1983 for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 160 (1908); *Suever v. Connell*, 439 F.3d 1142, 1146-47 (9th Cir. 2006).

### VII. Qualified Immunity

Defendants contend that they are entitled to qualified immunity with respect to plaintiff's claims for damages under the RLUIPA and the Equal Protection Clause of the Fourteenth Amendment. This defense protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense permits defendants to act on "a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation," thereby protecting "all but the plainly incompetent or those who knowingly violate the law." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Even if there has been a constitutional violation, an official "should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

In deciding whether defendants are entitled to qualified immunity, the court must first determine whether, taking the facts alleged in the light most favorable to plaintiff, it appears that defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). In the course of making this determination, the court "might find it necessary to set forth principles which will become the basis for holding that is a right is clearly established." *Saucier*, 533 U.S. at 201. If the court determines that no "constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, if the court finds that such a right would have been violated, the court must determine whether the right defendants are alleged to have violated was clearly established. *Id.,* at 201. A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court must consider the specific facts of the case before it. *Saucier*, 533 U.S. at 202. Therefore, the

15

dispositive inquiry is whether it would be clear to a reasonable prison official that "his conduct was unlawful in the situation he confronted," by reference to decisional law agreeing that "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Saucier*, 533 U.S. at 201. Decisional law need not proscribe the exact conduct in question; it must only make the conduct's unlawfulness apparent. *Hope v. Pelzer*, 536 U.S. 730 (2002). Plaintiff has the burden of demonstrating that the right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

At the time of conduct giving rise to this action, the law provided:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). As stated, the court takes the facts alleged in the light most favorable to plaintiff. Plaintiff alleges that he was punished and forced to cut his hair to avoid further punishment for growing his hair even though cutting it violated his sincerely held religious beliefs. Plaintiff has asserted his religious belief that by cutting his hair on the threats of prison officials, he has doubted God, for which there is no forgiveness or atonement, and as a result his connection to God has been severed. These allegations of belief, if true, would appear to entitle plaintiff to relief. *See Warsoldier*, 418 F.3d at 995-1001.

However, plaintiff's RLUIPA claim must be dismissed under the second prong of the qualified immunity inquiry. Plaintiff was punished for having long hair in 2003 and was made to cut his hair in 2004. The right that plaintiff asserts was not clearly established at the time of defendants' actions. Without the benefit of precedent regarding this statute, defendants operated

16

under First Amendment jurisprudence, which suggested that they need not accommodate unorthodox religious beliefs. *See*, *e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 & n. 2 (1972) (not every religious sect or group within a prison must have identical facilities or personnel; *Ward*, 1 F.3d at 880 (no affirmative duty to provide prisoner with Orthodox rabbi); *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (no free exercise violation where prisoner did not show prison's failure to provide him with Unitarian Universalist chaplain denied him 'reasonable opportunity" to exercise his faith). While plaintiff clearly believed that he should follow what he understands to be the teachings of Jesus, he asserts that he is not Christian. He also asserts that he is not Muslim or Rastafarian, although he will attend Christian and Muslim functions to satisfy his spiritual needs. He insists that he follows the word of God as revealed to him personally. The objective good faith of the officers is measured in part by the existing case law at the time that the seemingly unique and individualized beliefs of an inmate, not grounded in any particular religion or creed, need not be accommodated in the prison.

The operative precedent at the time permitted infringements on religious practices insofar as the infringements were rationally related to a legitimate penological goal. *See Turner v. Safley*, 482 U.S. 78, 98 (1987). Prison security clearly would satisfy this standard because long-standing precedent held it to be a compelling state interest. *See Pell v. Procunier*, 417 U.S. 817, 823 (1974); *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997). There were no Ninth Circuit cases explaining what would constitute a "substantial burden" on "religious exercise" under the statute. The case of *Mayweathers v. Newland*, 314 F.3d 1062, 1066-1069 (2002), in which Muslim prisoners at California State Prison - Solano, challenged various restrictions on their ability to attend Friday services, merely found the Act constitutional. It offered no guidance as to what constituted a "substantial burden" on religious exercise. The only Ninth Circuit case clarifying this term in the context of RLUIPA was decided in 2005. *See Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005) ("Because the grooming policy intentionally puts significant pressure on inmates such as Warsoldier to abandon their religious beliefs by cutting their hair,

1  CDC's grooming policy imposes a substantial burden on Warsoldier's religious practice.").
2  Even if defendants were aware of the this court's orders in *Mayweathers* enjoining the
3  punishment of Muslims for refusing to cut their hair, unpublished orders in ongoing litigation in
4  the district court cannot be said to make the right asserted "clearly established." Given the
5  recent change in the law and the lack of precedent explaining the new standard, the contours of
6  the rights conferred by RLUIPA were not sufficiently clear that defendants would have known
7  their conduct was unconstitutional. For these reasons, the court finds that all defendants are
8  entitled to qualified immunity with respect to plaintiff's RLUIPA claim.

9  Plaintiff's Equal Protection claim is based on the allegation there is no rational basis for
10  grooming standards that permit female prisoners to grow their hair while maintaining standards
11  that prohibit men from growing their hair. Defendants assert that they are entitled to qualified
12  immunity on this claim as well. As with the religion based claims, the court must first determine
13  whether, taking the evidence in the light most favorable to the plaintiff, the allegations if proved
14  would entitled plaintiff to relief. Prisoners "do not forfeit all constitutional protections by reason
15  of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), and
16  they retain some protections under the Equal Protection Clause of the Fourteenth Amendment.
17  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (Equal Protection Clause of the Fourteenth
18  Amendment protects prisoners from invidious discrimination based on race). The Equal
19  Protection Clause is a command that all persons similarly situated should be treated alike. *City*
20  *of Cleburne, Tex. v . Cleburne Living Center*, 473 U.S. 432, 439 (1985). Plaintiff claims that
21  forcing male prisoners to wear short hair while permitting female prisoners to grow their hair
22  constitutes a difference in treatment of similarly situated persons, i.e., prisoners, based on an
23  immutable characteristic, i.e., gender. For gender classifications, the court utilizes intermediate
24  scrutiny. Thus, a regulation must be substantially related to achieving important governmental
25  objectives. *United States v. Virginia*, 518 U.S. 515, 533 (1996). Statutes (or regulations) that
26  utilize this classifications need not be capable of achieving its goal in every instance. *Id*., at 533.

Assuming that security is the interest defendants assert is furthered by the differences in the grooming regulations, there clearly is an important governmental objective. *See Pell*, 417 U.S. at 823; *May*, 109 F.3d at 563. Assuming plaintiff's allegations state a claim, the law was not clearly established in 2003 or 2004 that the difference in grooming rules violated equal protection. Plaintiff has not cited and the court has not found any Ninth Circuit cases discussing sex discrimination with respect to the application of prison grooming regulations. However, in 1976, the Fifth Circuit found that permitting female prisoners to grow their hair while requiring male prisoners to cut theirs did not violate the Equal Protection clause because it was not an unreasonable or arbitrary regulation. *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). Given the lack of Ninth Circuit precedent, the inherent flexibility of intermediate scrutiny and the lack of guidance from other circuits, there is no basis for finding that defendants were on notice that their conduct in the circumstances that confronted them could constitute sex discrimination in violation of the Equal Protection Clause. Without such precedent, defendants are immune from suit for damages.[5]

## VIII. Conclusion

For all the reasons explained, the court finds the following:

1. Plaintiff failed to exhaust available administrative remedies with respect to his retaliation claim;

2. Plaintiff fails to state a claim that defendants violated his rights under the Fourth Amendment;

3. Plaintiff exhausted his RLUIPA and Equal Protection claims with his first grievance, CMF 04-M-0715;

---

[5] Because the court concludes that defendants are entitled to summary judgment on grounds of qualified immunity, the court does not reach the merits of defendants' argument that plaintiff's claims are moot.

4. Insofar as plaintiff seeks damages against defendants in their individual capacities, defendants are not entitled to Eleventh Amendment immunity.  But the Eleventh Amendment bars suit for damages against defendants in their official capacity; and,

5. Defendants are entitled to qualified immunity with respect to plaintiff's RLUIPA and Equal Protection claims, the only remaining claims in the case.

Accordingly, it is hereby RECOMMENDED that plaintiff's June 22, 2006, motion for summary judgment be denied, that defendants' August 21, 2006, motion for summary judgment be granted and that judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 22, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE